# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID MATTHEWS and BRENDA MATTHEWS, on behalf of themselves and all others similarly situated, | NO. |
| | CLASS ACTION |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| TRANS UNION, LLC | |
| Defendant. | |

## CLASS ACTION COMPLAINT

On behalf of themselves and all others similarly situated, Plaintiffs David Matthews and Brenda Matthews (collectively referred to as "Plaintiffs"), by and through their attorneys Francis & Mailman, P.C. respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a consumer class action brought for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") against Trans Union, LLC ("Defendant" or "Trans Union"), a national consumer reporting agency. Trans Union violates the FCRA by preparing and furnishing consumer reports that include tax liens that have been withdrawn and by failing to report that withdrawn tax liens have been withdrawn. Trans Union also violates the FCRA by failing to remove a withdrawn tax lien from a consumer's credit report, and failing to report a withdrawn tax lien as withdrawn, after receiving notice of a dispute from a consumer regarding Trans Union's reporting of the withdrawn tax lien.

## PARTIES

2. Plaintiff David Matthews is an adult individual residing in Lawrenceville, GA and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Plaintiff Brenda Matthews is an adult individual residing in Lawrenceville, GA and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

4. Defendant Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b). Trans Union's consumer relations office and national file disclosure office where it directs consumers to send requests for files and disputes, and processes such communications, including those pertaining to the Plaintiffs herein, resides within this district.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter based upon 15 U.S.C. § 1681p.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7. Trans Union is one of the "big three" consumer reporting agencies (singular "CRA") in the United States.

8. Trans Union sells consumer reports (commonly called "credit reports") about millions of consumers annually.

9. Trans Union is regulated by the FCRA.

10. Upon information and belief, for several years Trans Union has obtained its information about bankruptcies, civil judgments and tax liens (*i.e.*, "public records" information) from private businesses that it calls "vendors," which furnish such information to national CRAs.

11. Trans Union has not retrieved actual public records from courthouses or actual government offices for several years, and instead purchases them from another company.

12. The public record information that Trans Union receives from its other company is not the actual court or taxing authority record. Rather, it receives a distilled version of those records which does not include all of the information available at the actual courthouses or government offices where the true records are housed.

13. Trans Union knows that both it, and its hired public records vendors make mistakes in the distilled public records information that is acquired for purposes of credit reporting.

14. On November 22, 2010, a Notice of Federal Tax Lien for Plaintiff David Matthews was recorded in the Pulaski County Records by the Pulaski County Circuit Clerk and Recorder in Little Rock, Arkansas, Serial Number 2010073216 (the "individual tax lien").

15. On November 22, 2010, a Notice of Federal Tax Lien for Plaintiffs David and Brenda Matthews was recorded in the Pulaski County Records by the Pulaski County Circuit Clerk and Recorder in Little Rock, Arkansas, Serial Number 2010073215 (the "joint tax lien").

16. On March 13, 2013, a Certificate of Release of Federal Tax Lien for the joint tax lien was recorded in the Pulaski County Records.

17. In March 2015 and April 2015, respectively, the Internal Revenue Service ("IRS") withdrew both the joint tax lien and the individual tax lien and filed withdrawals of those tax liens in the Pulaski County Records.

18. A Withdrawal of Filed Notice of Federal Tax Lien after Release for the joint tax lien was recorded in the Pulaski County Records on March 23, 2015.

19. A Withdrawal of Filed Notice of Federal Tax Lien for the individual tax lien was recorded in the Pulaski County Records on April 10, 2015.

20. Despite the fact that both the joint tax lien and the individual tax lien had been withdrawn and the withdrawals were recorded in the Pulaski County Records, Trans Union continued to report the tax liens as if they had not been withdrawn.

21. The Internal Revenue Code provides that the IRS may withdraw a notice of federal tax lien under certain circumstances, and that when a notice of tax lien is withdrawn, the provisions of the Internal Revenue Code "shall be applied as if the withdrawn notice had not been filed." 26 U.S.C. Section 6323(j)(1). Thus, if the IRS files a withdrawal of a notice of a tax lien, from a credit rating standpoint it is as if the notice of tax lien was never filed. *See* Memorandum of the Office of Chief Counsel Internal Revenue Service dated October 9, 2009, p. 3.

22. Trans Union's failure to remove a withdrawn tax lien from a consumer's credit file is not only a violation of the FCRA, but also undermines the purpose of a withdrawal which is to treat the notice of tax lien as having never been filed. This harms not only the consumer, but all persons and businesses that rely on the report containing the withdrawn lien in making a decision whether to extend credit, employment or housing to the consumer.

23. On or about May 16, 2015, Plaintiff David Matthews sent an online notice to Trans Union that he disputed the reporting of the individual and joint tax liens on his Trans Union credit report because both tax liens had been withdrawn.

24. Trans Union sent the results of its handling of the dispute to Plaintiff David Matthews dated May 25, 2015, indicating that it had not removed the individual and joint tax liens. Trans Union included a consumer report that showed that Trans Union was still reporting both tax liens and was not reporting that those liens had been withdrawn.

25. On or about January 6, 2016, Plaintiff David Matthews mailed Trans Union a dispute letter concerning the tax liens. Plaintiff referenced his dispute of May 2015 and that Trans Union did not remove the individual and joint tax liens from his reports. Plaintiff enclosed copies of the Withdrawals of the individual and joint tax liens, and requested that Trans Union remove these tax liens from his credit report as soon as possible.

26. Trans Union sent the results of its handling of the dispute to Plaintiff David Matthews dated January 14, 2016, indicating that it had not removed the individual and joint tax liens. Trans Union included a consumer report that showed that Trans Union was still reporting both tax liens and was not reporting that those liens had been withdrawn.

27. Plaintiff David Matthews obtained his Trans Union credit report dated March 16, 2016. Trans Union continued to report both the individual and joint tax liens, and was not reporting that the tax liens had been withdrawn, although the Withdrawals for both tax liens had been recorded in the Pulaski County Records, and Plaintiff David Matthews had notified Trans Union the liens were withdrawn and had provided the Withdrawals.

28. On or about May 16, 2016, Plaintiff Brenda Matthews sent an online notice to Trans Union that she disputed the reporting of the joint tax lien on her Trans Union credit report because this tax lien had been withdrawn.

29.     Trans Union sent the results of its handling of the dispute to Plaintiff Brenda Matthews on or about April 19, 2016 indicating that it had not removed the joint tax lien. Trans Union provided Plaintiff Brenda Matthews with a consumer report that showed Trans Union was still reporting the joint tax lien and was not reporting that the joint tax lien had been withdrawn.

30.     The FCRA provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

31.     Trans Union violated the FCRA, 15 U.S.C. § 1681e(b), as to Plaintiff David Matthews by reporting the individual and joint tax liens on his credit reports after those tax liens had been withdrawn, and by reporting the individual and joint tax liens without indicating those tax liens had been withdrawn.

32.     Trans Union violated the FCRA, 15 U.S.C. § 1681e(b), as to Plaintiff Brenda Matthews by reporting the joint tax lien on her credit reports after that tax lien had been withdrawn, and by reporting the joint tax lien without indicating the tax lien had been withdrawn.

33.     The FCRA also requires that Trans Union conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. Trans Union must notify the source of the information of the dispute within five days. Trans Union must provide the source with all relevant information received from the consumer. Trans Union must review and consider all relevant information provided by the consumer in conducting the reinvestigation. Trans

Union must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. Trans Union must complete the reinvestigation within 30 days. Trans Union must send a consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

34. Trans Union violated the FCRA, 15 U.S.C. § 1681i(a), as to Plaintiff David Matthews in its handling of his disputes of the individual and joint tax liens that had been withdrawn, including the continued reporting of those tax liens, and failing to report that those tax liens had been withdrawn.

35. Trans Union violated the FCRA, 15 U.S.C. § 1681i(a), as to Plaintiff Brenda Matthews in its handling of her dispute of the joint tax lien that had been withdrawn, including the continued reporting of this joint tax lien, and failing to report that the joint tax lien had been withdrawn.

36. At all times pertinent hereto, Trans Union's conduct was a result of its deliberate policies and practices, was intentionally accomplished through intended procedures, and was carried out in reckless disregard for a consumer's rights as set forth in sections 1681e(b) and 1681i(a) of the FCRA. Specifically, at all times pertinent hereto, Trans Union was aware that it was not receiving regular updated records and was often reporting outdated or obsolete public records. Notwithstanding this fact, Trans Union had no procedure to check the current status of a public record (or at least a look back of 30 days) prior to reporting out the record.

37. The reporting of Plaintiffs' tax liens by Trans Union was inaccurate, and occurred because Trans Union failed to follow reasonable procedures to assure maximum

possible accuracy in the preparation of their consumer reports. Specifically, Trans Union does not follow the same automated and systematically rigorous processes to obtain all withdrawals of tax liens that it follows to obtain the original tax lien information.

38. Indeed, Trans Union follows no procedure which assures that, when a federal tax lien is withdrawn, the withdrawal is promptly obtained from the public records, the tax lien is removed from the consumer's credit report, or that the withdrawn tax lien is reported as withdrawn.

39. Instead, Trans Union continues to inaccurately report withdrawn tax liens. In this case, Trans Union continued to report the individual and joint tax liens on Plaintiff David Matthews' credit reports despite the fact that both tax liens had been withdrawn and the Withdrawals were recorded in the public record. Trans Union also continued to report the joint tax lien on Plaintiff Brenda Matthews' credit reports after it had been withdrawn and the Withdrawal recorded. Moreover, Trans Union refused to remove the tax liens from either Plaintiffs' reports, or report the tax liens as withdrawn, after Plaintiffs notified Trans Union the liens were withdrawn and provided Trans Union with the Withdrawals.

40. Trans Union failed to conduct a reasonable reinvestigation of Plaintiffs' disputes, and failed to review and consider all the relevant information provided by Plaintiffs, including the Withdrawals of the tax liens, in clear violation of the FCRA, 15 U.S.C. § 1681i(a). If it had, Trans Union would have removed the tax liens from Plaintiffs credit reports, or reported that those tax liens had been withdrawn.

41. Trans Union's practices not only violate the FCRA, they exact serious consequences on consumers, including Plaintiffs, and the economy by producing inaccurate credit reports, preventing consumers from obtaining credit, and denying

consumers the opportunity to correct inaccurate tax lien information that Trans Union is reporting about them.

42. At all times pertinent hereto, Trans Union was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Trans Union.

## CLASS ACTION ALLEGATIONS

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

44. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

    a. All persons residing within the United States and its Territories who: (i) had a federal tax lien recorded; (ii) the tax lien appeared on a Trans Union consumer report dated within two years prior to the filing of this Complaint; (iii) the public record indicated that a Withdrawal of the tax lien had been recorded at least 30 days prior to the date of the Trans Union consumer report; and (iv) the Trans Union consumer report did not indicate that the tax lien had been withdrawn (hereafter the "Two-year Withdrawal Class").

    b. All persons residing within the United States and its Territories who: (i) had a federal tax lien recorded; (ii) the tax lien appeared on a Trans Union consumer report dated within five years prior to the filing of this Complaint; (iii) the public record indicated that a Withdrawal of the tax lien had been recorded at least 30 days prior to the date of the Trans Union consumer report; and (iv) the Trans Union consumer report did not indicate that the tax lien had been withdrawn (hereafter the "Five-year Withdrawal Class").

c.      All persons residing within the United States and its Territories who: (i) notified Trans Union within two years prior to the filing of this Complaint of a dispute of a federal tax lien that had been withdrawn; (ii) the public record indicated at the time of the dispute that a Withdrawal of the tax lien had been recorded; and (iii) Trans Union failed remove the tax lien from the consumer's file, or failed to indicate that the lien had been withdrawn, within 30 days of receiving the dispute (hereafter the "Two-year Dispute Class").

d.      All persons residing within the United States and its Territories who: (i) notified Trans Union within five years prior to the filing of this Complaint of a dispute of a federal tax lien that had been withdrawn; (ii) the public record indicated at the time of the dispute that a Withdrawal of the tax lien had been recorded; and (iii) Trans Union failed remove the tax lien from the consumer's file, or failed to indicate that the lien had been withdrawn, within 30 days of receiving the dispute  (hereafter the "Five-year Dispute Class").

e.      All persons residing within the United States and its Territories who: (i) notified Trans Union within two years prior to the filing of this Complaint of a dispute of a federal tax lien that had been withdrawn; (ii) the public record indicated at the time of the dispute that a Withdrawal of the tax lien had been recorded; and (iii) Trans Union removed the tax lien from the consumer's file.  (hereafter the "Two-year Admitted Inaccuracy Class").

f.      All persons residing within the United States and its Territories who: (i) notified Trans Union within five years prior to the filing of this Complaint of a dispute of a federal tax lien that had been withdrawn; (ii) the public record indicated at the time of the dispute that a Withdrawal of the tax lien had been recorded; and (iii) Trans Union removed the tax lien from the consumer's file.  (hereafter the "Five-year Admitted Inaccuracy Class").

45.     Plaintiffs reserve the right to amend the definition of the Classes based on discovery or legal developments.

46.     **Numerosity**. **FED. R. CIV. P. 23(a)(1)**.  The Class members are so numerous that joinder of all is impractical.  Although the precise number of Class members is known only to Trans Union, tens of thousands of Withdrawals of federal tax liens are recorded in public records, and the names and addresses of the Class members are identifiable through documents maintained by Trans Union and through publicly available records.

47.     **Existence and Predominance of Common Questions of Law and Fact**. **FED. R. CIV. P. 23(a)(2)**.  Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members.  The common legal and factual questions include, among others:

a.      Whether Trans Union violated section 1681e(b) of the FCRA by reporting a withdrawn federal tax lien after the date the Withdrawal had been recorded, or reporting the tax lien without reporting it had been withdrawn;

b.      Whether the violations of section 1681e(b) were willful;

c.      Whether the violations of section 1681e(b) were negligent;

d.      Whether Trans Union violated section 1681i(a) of the FCRA by failing to remove a withdrawn federal tax lien from a consumer's file, or failing to indicate that the tax lien had been withdrawn, after receiving notice of a dispute from a consumer regarding a withdrawn tax lien;

e.      Whether the violations of section 1681i(a) were willful; and

  f.  Whether the violations of section 1681i(a) were negligent;

  48.  **Typicality**. **FED. R. CIV. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories. Trans Union reports federal tax liens that have been withdrawn, or reports tax liens that have been withdrawn without indicating those tax liens have been withdrawn. Trans Union fails to remove a withdrawn federal tax lien from a consumer's file, or fails to indicate the tax lien has been withdrawn, after receiving notice of a dispute from a consumer regarding a withdrawn tax lien. Plaintiffs have the same claims for statutory, actual and punitive damages that they seek for absent class members.

  49.  **Adequacy**. **FED. R. CIV. P. 23(a)(4)**. Plaintiffs are adequate representatives of the Class. Their interests are aligned with, and are not antagonistic to, the interests of the members of the Class they seeks to represent. They have retained counsel with extensive experience handling consumers class actions, and have been certified to serve as counsel on more than 50 occasions, in this district and through the country. *See, e.g., Flores v. Express Personnel*, C.A. 14-3298, 2017 WL 1177098 (E.D. Pa., March 30, 2017). They intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

  50.  **Predominance and Superiority**. **FED. R. CIV. P. 23(b)(3)**. Questions of law and fact common to the Class members predominate over questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Trans Union's conduct described in this Complaint stems from common and uniform practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate actions

against Trans Union, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Trans Union's practices. Moreover, management of this action as a class action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

51. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## **CAUSES OF ACTION**

### **COUNT I**
### **(Violation of 15 U.S.C. § 1681e(b))**

52. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

53. The above-mentioned reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

54. Trans Union willfully and/or negligently failed to comply with 15 U.S.C. § 1681e(b) by preparing consumer reports containing withdrawn federal tax liens, or

reporting those tax liens without indicating they had been withdrawn, after the date the Withdrawals were recorded in the public record.

55. Pursuant to 15 U.S.C. §§ 1681n and o, Trans Union is liable to Plaintiff and all Class members for its failure to comply with FCRA Section 1681e(b), in an amount equal to the sum of: (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT II
### (Violation of 15 U.S.C. § 1681i)

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

57. Trans Union willfully and/or negligently failed to comply with 15 U.S.C. § 1681i(a) by failing to remove a withdrawn tax lien from a consumer's file, or failing to indicate that the tax lien had been withdrawn, after being notified of a consumer's dispute regarding a withdrawn tax lien.

58. Pursuant to 15 U.S.C. §§ 1681n and o, Trans Union is liable to Plaintiff and all Class members for its failure to comply with FCRA Section 1681i, in an amount equal to the sum of: (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

On the First Claim for Relief:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

B. An order declaring that Trans Union's actions are in violation of the FCRA;

C. An award of statutory, actual and punitive damages for Plaintiffs and the Classes;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper. (Injunctive relief?) here and in each below prayer for the counts?

On the Second Claim for Relief:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

B. An order declaring that Trans Union's actions are in violation of the FCRA;

C. An award of statutory, actual and punitive damages for Plaintiffs and the Classes;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

On the Third Claim for Relief:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

B. An order declaring that Trans Union's actions are in violation of the FCRA;

C. An award of statutory, actual and punitive damages for Plaintiffs and the Classes;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

On the Fourth Claim for Relief:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

B. An order declaring that Trans Union's actions are in violation of the FCRA;

C. An award of statutory, actual and punitive damages for Plaintiffs and the Classes;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Respectfully submitted,

Dated: April 21, 2017        BY:     /s/ James A. Francis
**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS
JOHN SOUMILAS
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com

James M. Feagle, Esq.
(*pro hac vice forthcoming*)
**SKAAR & FEAGLE, LLP**
Tucker Office:
2374 Main Street
Suite B
Tucker, GA 30084
(404) 373-1970
(404) 601-1855 fax
jfeagle@skaarandfeagle.com

Robert Sola, Esq.
(*pro hac vice forthcoming*)
**ROBERT S. SOLA, P.C.**
1500 SW First Avenue
Suite 800
Portland OR 97201
(503) 295-6880
(503) 243-4546 (fax)
rssola@msn.com

*Attorneys for Plaintiffs*